**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION**

**RAUL ANTONIO TRINIDAD,**

    Plaintiff,

v.                                                                                  Case No: 5:23-cv-28-TJC-PRL

**CVS HEALTH CORPORATION / CVS
PHARMACY, INC.,**

    Defendants.

                                                                           /

**REPORT AND RECOMMENDATION**[1]

Upon referral, before the Court, is Defendant's motion to dismiss *pro se* Plaintiff's complaint under Federal Rules of Civil Procedure 8(a) and 12(b)(6). (Doc. 7). Because the complaint is a shotgun pleading and fails to state a claim upon which relief can be granted, I recommend granting the motion to dismiss.

**I.    BACKGROUND**

As alleged in the complaint, this case begins on January 21, 2022, when a pharmacist working for Defendant, CVS Health Corporation ("CVS"), in "Citrus county, Florida [sic] gave the [p]laintiff a .5 mg [sic] of Clonazepam instead of the 1mg [sic] prescribed by . . . [his] [p]sychiatrist." (Doc. 1-1 at ¶ 4). Plaintiff then filed a complaint with a CVS customer service representative, that he was never contacted about. (Doc. 1-1 at ¶ 5). Six days later, on January 27, "Plaintiff . . . was verbally abused by the [p]harmacist on duty at [the same] CVS . . . store

---

[1] Within 14 days after being served with a copy of the recommended disposition, a party may file written objections to the Report and Recommendation's factual findings and legal conclusions. *See* Fed. R. Civ. P. 72(b)(3); Fed. R. Crim. P. 59(b)(2); 28 U.S.C. § 636(b)(1)(B). A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

. . . for not taking [Clonazepam] . . . as it was given to [him] . . . on . . . January 21st, 2022 [sic] and for filing a complaint with the CVS Customer Service Department [sic]." (Doc. 1-1 at ¶ 6). "On . . . May 18th, 2022 [sic] the [p]harmacist on duty at [the same] CVS . . . store . . . used discriminatory language against the [p]laintiff." (Doc. 1-1 at ¶ 7). Plaintiff filed a second complaint with a CVS customer service representative that "was sent to North Carolina." (Doc. 1-1 at ¶ 7). "At the end of May, 2022 [sic] the District Leader, Mr. Brian S. Belemjian, for [the same] CVS . . . store . . . was made fully aware of the [p]laintiff's complaints . . . during a phone call conversation." (Doc. 1-1 at ¶ 8). Specifically, Plaintiff "described his complaints as . . . a) [t]he [p]harmacist's behavior . . . [on January 21st, January 27th, and May 18th] [;] b) Plaintiff's prescriptions prices irregularities[;] c) Plaintiff's prescriptions issues after almost two . . . years[;] d) [t]he lack of response from the 1st complaint . . . [;] e) [t]hat the 2nd complaint . . . was sent to North Carolina." On June 10, 2022, Plaintiff sent an e-mail to Mr. Belemjian, to follow up on his "voicemail reinstating his complaints on the . . . [same CVS] store." (Doc. 1-1 at ¶ 9).

On June 18, 2022, Plaintiff "was given a medication HYDROXYZINE HCL 25 mg [sic] that caused . . . [him] a severe allergic reaction." (Doc. 1-1 at ¶ 10). "Plaintiff was also given a three . . . months [sic] supply of SEROQUEL XR 300mg [sic], a medication also taken by the [p]laintiff, for $3.95. . . . [He] notified . . . [Mr. Belemjian] about the price and quantity of SEROQUEL XR 300mg given to [him]." (Doc. 1-1 at ¶ 10). "On July 30th, 2022 [sic] the [p]harmacist on duty at [the same] CVS . . . store . . . attempted to deny the [p]laintiff's request for information on HYDROXYZINE HCL 25mg [sic] the medication that cause [him] . . . a severe allergic reaction. . . . [He] noticed that his prescriptions [sic] record was tampered with by the aforementioned store." (Doc. 1-1 at ¶ 11). "At all times mentioned in this [c]omplaint

- 2 -

the [p]harmacists from [the same] CVS . . . store . . . were fully aware of and furnished the [p]laintiff's antipsychotic medications." (Doc. 1-1 at ¶ 12).

"On August 14th, 2022 [sic] Plaintiff contacted Karen S. Lynch, President and Chief Executive Officer of CVS . . . via Twitter to express his concerns about [the same] CVS . . . store. . . . [He] was contacted by CVS . . . via Twitter on the aforementioned date stating that the [p]laintiff's concerns were being forwarded to the CVS leadership team[.]" (Doc. 1-1 at ¶ 13). "Plaintiff was contacted by Mrs. Katie Tusing, Regional Director Emerging Leader for CVS . . ., by telephone. . . [He] was not satisfied with the way [she] . . . tried to down play [sic] the seriousness of [his] . . . complaints." (Doc. 1-1 at ¶ 14). "On August 15th, 2022 [sic] Plaintiff received an e-mail from the Executive Office at CVS . . . stating that they had received [his] . . . complaints and escalated them to the field leadership team. . . . Plaintiff responded . . . by requesting for his medications to be dispensed in the manufacturer container due to the lack of trust of the [p]harmacists [at the same] CVS . . . store . . . due to the [p]harmacists actions[.]" (Doc. 1-1 at ¶ 15).

"On . . . August 17th, 2022 [sic] Plaintiff made the Regional Manager, Mr. Robert Schmidt, for [the same] CVS . . . store . . . fully aware of the [p]laintiff's treatment at the . . . store during a telephone conversation." (Doc. 1-1 at ¶ 16). Specifically, "a) [t]he lack of an effort to investigate [his] . . . complaints by [Mr. Belemjian][;] b) [t]he attempt of the [p]harmacist on duty on July 30th, 2022 [sic] to deny . . . [him] access to the information of HYDROXYZINE HCL 25mg . . .[;] c) [t]he [p]harmacist's behavior . . . [on January 21st, January 27th, and May 18th] [;] d) Plaintiff's prescriptions prices irregularities[;] e) Plaintiff's prescriptions issues after almost two . . . years[;] f) [t]he lack of response from the 1st complaint . . . [;] g) [t]hat the 2nd complaint . . . was sent to North Carolina." (Doc. 1-1 at ¶ 16).

Apparently, Mr. Schmidt did not contact Plaintiff again after this telephone conversation. (Doc. 1-1 at ¶ 17). However, the complaint also alleges that "[o]n October 5th, 2022 Plaintiff sent an e-mail to . . . Mr. Belemjian, . . . asking for a follow up of his telephone conversation with . . . Mr. Schmidt. . . . Plaintiff was contacted by telephone by . . . Mr. Schmidt, and denied any wrong doing. Plaintiff disagreed." (Doc. 1-1 at 19). Between these events, the complaint alleges that Plaintiff contacted CVS pharmacy on Twitter on September 9, 2022, "stating that he had been in a mental institution and had not heard from anyone about his complaints . . . . [He] received a response . . . stating [his] . . . message was passed along . . . for further review." (Doc. 1-1 at ¶ 18).

Further, Plaintiff alleges that in response to an email from "Mrs. Shannon M. Ortiz", CVS' risk management analyst, he provided her "with the following sources of information for his complaints: 1) [his first and second complaint filed] . . . ; 2) . . . e-mail conversations with . . . Mr. Belemjian . . . [;] 3) Plaintiff's complaint with Ethnic Point . . .[;] [and] 4) Plaintiff's telephone **conversations** with . . . Mr. Schmidt[.]" (Doc. 1-1 at ¶ 21) (emphasis added). On December 6, 2022, Plaintiff emailed Mrs. Ortiz "asking for the Register Agent [sic] name for CVS . . . in Florida in order to serve his lawsuit. . . . [She] directed [him] . . . to serve his lawsuit on [the same] CVS . . . store . . . during a phone call conversation." (Doc. 1-1 at ¶ 22). The same day, he emailed Mrs. Ortiz "for clarification as to whom would be responsible for receiving [his] . . . lawsuit . . . [She] directed [him] . . . to send her the lawsuit. In a subsequent e-mail [she] . . . restated her position[.]" (Doc. 1-1 at ¶ 23).

Now, Plaintiff has brought a complaint asserting two claims against Defendant, Count I for negligence, and Count II for discrimination in violation of the ADA.

## II.   LEGAL STANDARDS

A *pro se* complaint is entitled to a generous interpretation. *Haines v. Kerner*, 404 U.S. 519 (1972). Even so, the complaint must meet certain pleading requirements. Under Rule 12(b)(6), a complaint that fails to "state a claim upon which relief can be granted" is subject to dismissal. In reviewing a motion to dismiss, a court considers the complaint, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007). To withstand a motion to dismiss, the complaint must state a claim to relief that is plausible on its face; that is, it must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). A pleading that offers only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id*. "Conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003). Further, under Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." If the court cannot "infer more than the mere possibility of misconduct," the complaint does not show entitlement to relief. *Iqbal*, 556 U.S. at 679.

### III. DISCUSSION

#### A. Shotgun Pleading

First, CVS argues that the Complaint should be dismissed because it is a shotgun pleading. Complaints violating Federal Rules of Civil Procedure 8(a)(2) or 10(b) "are often disparagingly referred to as 'shotgun pleadings.'" *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015). The Eleventh Circuit has recognized four basic types of shotgun pleadings: (1) a complaint that contains multiple counts where each count adopts the allegations of all preceding counts; (2) a complaint that is replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action; (3) a complaint that fails to separate into different counts each cause of action or claim for relief; and (4) a complaint that asserts multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions or which of the defendants the claim is brought against. *Id.* at 1321–23.

The Eleventh Circuit has repeatedly condemned the use of shotgun pleadings for "imped[ing] the administration of the district courts' civil dockets." *PVC Windows, Inc. v. Babbitbay Beach Constr., N.V.,* 598 F.3d 802, 806 n.4 (11th Cir. 2010). Shotgun pleadings require the district court to sift through allegations to separate the meritorious claims from the unmeritorious, resulting in a "massive waste of judicial and private resources." *Id.* A defendant served with a shotgun complaint should move the district court to dismiss the complaint pursuant to Rule 12(b)(6) or for a more definite statement under Rule 12(e). *Paylor v. Hartford Fire Ins. Co.* 748 F.3d 1117, 1126 (11th Cir. 2014).

Here, the complaint is an impermissible shotgun pleading. The complaint contains a litany of vague, conclusory, and immaterial facts, for example, alleging that Plaintiff

contacted CVS on Twitter. (Doc. 1-1 at ¶ 18). Further, the complaint realleges all of the facts from the paragraphs into a single count called "negligence." (Doc. 1-1 at 4). This count also includes new allegations, such as the failure of someone to "safely educate" Plaintiff about the risks of a combination of medicines. (Doc. 1-1 at 5 ¶ 10). Finally, the collection of grievances in this count (and likewise in the "discrimination" count) make it incredibly difficult to discern what, if anything, caused Plaintiff harm; what harm was caused, if any; what negligent conduct caused the plaintiff harm; and the individual or entity that caused it. Accordingly, the complaint should be dismissed as a shotgun pleading.

### B. Count I - Negligence

Further, as CVS argues, Count I of the complaint fails to state a cause of action for negligence. Under Florida law, to state a claim for negligence, "the plaintiff must allege (1) a duty or obligation recognized by the law requiring the defendant to protect others from unreasonable risks; (2) a breach of that duty; (3) a reasonably close causal connection between the conduct and the resulting injury; and (4) actual loss or damages." *Small v. Amgen, Inc.*, 2 F. Supp. 3d 1292, 1299 (M.D. Fla. 2014) (citations omitted).

Although the complaint alleges that there are several negligent actions attributable to CVS, many "fail to even approach a cognizable claim for negligence." (Doc. 7 at 8). For example, the complaint alleges three times that there was gross negligence by CVS Risk Management Analyst, Shannon M. Ortiz, telling Plaintiff where to serve his lawsuit, to send her the lawsuit, and "restating her position as a . . . Risk Management Analyst[.]" (Doc. 1-1 at 4 ¶¶ 5–6, 5 ¶ 7). Likewise, the complaint fails to state a cognizable claim when alleging negligence "[b]y the CVS Customer Service Department for sending [his] . . . complaint to

the state of North Carolina." (Doc. 1-1 at 5 ¶ 8). As CVS argues, it is implausible that these alleged actions breached a duty owed to Plaintiff or cognizably harmed him.

While some allegations might form the basis of a negligence claim, the complaint fails to allege a causal connection between the purportedly negligent conduct and any resulting injury. For example, the complaint alleges CVS breached its duty of care "[b]y failing to fill the prescription as prescribed by the [p]laintiff's [p]sychiatrist" and committed "[g]ross negligence by . . . tampering with the [p]laintiff [sic] prescriptions record[.]" (Doc. 1-1 at 4–5 ¶¶ 3–4). Further, the complaint alleges that CVS was negligent "[b]y failing to properly review the [p]laintiff's list of current medications before filling the prescription for HYDROXYZINE HCL 25mg." (Doc. 1-1 at 5 ¶ 9). Finally, the complaint alleges that CVS was negligent "[b]y failing to recognized [sic], and safely educated the [p]laintiff about the risks of taking HYDROXYZINE HCL 25mg along with High Blood Pressure [sic], Heart Failure and Synthroid medications. . . taken by the [p]laintiff and furnished to the [p]laintiff by CVS[.]" (Doc. 1-1 at 5 ¶ 10).

As CVS correctly argues, however, none of this purportedly negligent conduct is accompanied with allegations demonstrating a causal connection to any injury to Plaintiff. Instead, the complaint (after Count II) simply lists harms generally – namely, that "[a]s a proximate result of the negligence by CVS . . . Plaintiff . . . suffered a severe allergic reaction. . . ., mental anguish, loss of trust in CVS[,] . . . . [and] will have to endure permanent trust issues with any other Pharmacy[.]" (Doc. 1-1 at 5–6). Given the number of allegations claiming CVS was negligent, it is impossible to infer a causal connection between any action and the harms. Thus, it appears that the complaint fails to state a claim for negligence against CVS.

Accordingly, I submit that CVS' motion to dismiss Count I of the complaint should be **granted**.

### C. Count II - Discrimination under the ADA

In Count II of Plaintiff's complaint, he asserts a claim for discrimination under the ADA against CVS. Although the complaint fails to specify what Title of the ADA the claim is asserted under, CVS aptly points out that only Title III potentially applies to the facts presented here. (Doc. 7 at 9 ("Title I regulates discrimination in the workplace; Title II prohibits discrimination by public entities; and Title III prohibits discrimination by private entities in places of public accommodation.") (quoting *Access Now, Inc. v. S. Fla. Stadium Corp.*, 161 F. Supp. 2d 1357, 1362 (S.D. Fla. 2001))). Title III provides: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).[2]

To state a claim for discrimination under Title III of the ADA, Plaintiff must allege "(1) that [he] is an individual with a disability, (2) that [D]efendant is a place of public accommodation, (3) that [D]efendant denied [him] full and equal enjoyment of the goods, services, facilities or privileges offered by defendant, (4) on the basis of [his] disability." *Schiavo ex rel. Schindler v. Schiavo*, 358 F. Supp. 2d 1161, 1165 (M.D. Fla.), *aff'd*, 403 F.3d 1289 (11th Cir. 2005) (citing *Larsen v. Carnival Corp.*, 242 F. Supp. 2d 1333, 1342 (S.D. Fla. 2003)).

---

[2] CVS is considered a place of public accommodation under 28 C.F.R. § 36.104, which provides that a pharmacy is a place of public accommodation when "operated by a private entity whose operation affect commerce[.]" 28 C.F.R. § 36.104.

Here, as CVS argues, the complaint fails to allege that Plaintiff is an individual with a disability.

While Plaintiff's response to the motion to dismiss provides new allegations that he "belongs to a minority group and has a mental health issue[,]"[3] these are not considered part of the complaint. (Doc. 8 at ¶ 7); *see Newsome v. Chatham Cnty. Det. Ctr.*, 256 F. App'x 342, 344 (11th Cir. 2007) (holding that newly raised allegations in objection to report and recommendation on motion to dismiss should have been considered "a motion to amend [plaintiff's] . . . complaint" that would be granted); *see also Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) ("[w]hen considering a motion to dismiss . . . the Court limits its consideration to the pleadings and exhibits attached thereto."). Thus, the complaint fails to state a claim upon which relief can be granted for discrimination under the ADA.

Further, CVS argues that Count II should be dismissed because the complaint does not seek injunctive relief, which is the only relief afforded for a private right of action under Title III of the ADA. Indeed, only injunctive relief is available to plaintiffs suing under Title III of the ADA, and "there is no private right of action for [money] damages." *Jairath v. Dyer*, 154 F.3d 1280, 1283 & n.7 (1998); *see Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1329 (11th Cir. 2013). Instead, "money damages [are] only [available] where the civil action is initiated by the Attorney General." *Berkery v. Kaplan*, 518 F. App'x 813, 814 (11th Cir. 2013) (affirming dismissal of ADA Title III claim seeking monetary damages for failure to state a claim when conducting review under 28 U.S.C. § 1915). Here, Plaintiff is seeking "general damages in the sum of $15,000,000[;] . . . punitive damages in the range amount of $740,000-

---

[3] Specifically, Plaintiff states that he "was declared disable[d] under the Social Security Administration Rule in 2010 . . . [and] has been diagnosed with **Bipolar Schizophrenia, Depression and Anxiety** [sic]." (Doc. 8 at ¶ 12).

749,999 [sic][;] . . . costs of suit and incidentals incurred in connection with this action[;] [and] . . . such other and further relief as the Court may deem proper." (Doc. 1-1 at 6). Clearly, Plaintiff is not seeking injunctive relief, and it is unclear that the Court could fashion an equitable remedy to benefit Plaintiff. *See Cole v. Nat'l Collegiate Athletic Ass'n*, 120 F. Supp. 2d 1060, 1067 (N.D. Ga. 2000).

Accordingly, I submit that CVS' motion to dismiss Count II should be **granted**.

### IV.  CONCLUSION

Accordingly, for the reasons stated above, I recommend that CVS' motion to dismiss Plaintiff's complaint (Doc. 7), be **granted**.

Recommended in Ocala, Florida on May 10, 2023.

_____
PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy